**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| OROCHEM TECHNOLOGIES, INC., an Illinois Corporation, | |
| Plaintiff, | |
| v. | Civil Action No. 1:17-cv-____ |
| | Honorable _____ |
| WHOLE HEMP COMPANY, LLC, a Colorado Limited Liability Company, doing business as FOLIUM BIOSCIENCES, KASHIF SHAN, RAJ GUPTA, BRAD JONES, ZACH JONES, CHRIS HALEY, ERIC FLEMING and PRAVIN NINAWE, | |
| Defendants. | |

## VERIFIED COMPLAINT FOR INJUNCTIVE, DECLARATORY AND OTHER RELIEF

NOW COMES Plaintiff, Orochem Technologies, Inc. ("Orochem"), by and through its undersigned counsel, and for its verified complaint for injunctive, declaratory, and other relief, against Defendants, Whole Hemp Company, doing business as Folium Biosciences ("Folium"), Kashif Shan ("Shan"), Raj Gupta ("Gupta"), Brad Jones ("B. Jones"), Zach Jones ("Z. Jones"), Chris Haley ("Haley"), Eric Fleming ("Fleming"), and Pravin Ninawe ("Ninawe") (collectively the "Folium defendants"), states as follows:

## Nature of the Case

1. Orochem is a biotechnology company that utilizes its patented column chromatography and simulated moving bed chromatography ("Column Chromatography and SMB technology") to purify and concentrate an array of

1

biopharmaceutical, nutraceutical, fine chemical, and food products. Over the past twenty years, Orochem has been frequently engaged by biopharmaceutical, nutraceutical, chemical, and food producers to solve complicated purification problems by applying its proprietary Column Chromatography and SMB technology. As a result of these efforts, Orochem has designed, constructed, and installed multiple commercial scale Column Chromatography and SMB units to produce biopharmaceutical, nutraceutical, chemical, and food products.

2.     Orochem has developed a proprietary and confidential method to extract and purify cannabidiol ("CBD") from industrial hemp. CBD is a non-psychoactive natural product found in industrial hemp that is reported to have significant medical benefits, including providing relief from inflammation, pain, seizures, and other neurologic conditions. The key challenge in purifying CBD from industrial hemp is to completely remove impurities such as chlorophyll, lipids, sugars and tetrahydrocannabinol ("THC"), which is the psychoactive compound present in industrial hemp. Another challenge is to completely remove traces of solvent from the final product that are used in the extraction and/or purification processes. Utilizing its proprietary column chromatography and SMB technology, as well as its proprietary methods for solvent removal, Orochem successfully developed a process to produce a THC-free and solvent-free CBD product in commercially viable quantities.

3.     Folium purports to be a vertically integrated producer of CBD from industrial hemp. However, because Folium lacked the technology to produce

2

commercial quantities of CBD from industrial hemp, Folium approached Orochem in late 2015 to produce THC-free CBD at a commercial scale for Folium. Folium falsely led Orochem to believe that it was interested in engaging in a long-term supply agreement for the production of commercial quantities of CBD.

4. Unbeknownst to Orochem, Folium's real interest was to get access to and discover the details of Orochem's proprietary methods and trade secrets for the extraction and purification of CBD from industrial hemp so that it could steal Orochem's technology and create a replica production line at its own competing facility. To facilitate its scheme to steal Orochem's proprietary methods and designs to produce CBD in commercially viable quantities, Folium secretly recruited one of Orochem's process engineers, Ninawe, to help them create a CBD production line based upon Orochem's proprietary Column Chromatography and SMB technology. These efforts began when Ninawe was still an employee of Orochem and have continued today as Folium has hired Ninawe to help design and construct a copycat production line based upon Orochem's proprietary technology.

5. Beyond engaging in a brazen theft of Orochem's valuable trade secrets, the Folium defendants have also breached their contractual confidentiality obligations to Orochem. Throughout the course of the parties' relationship, the Folium defendants repeatedly acknowledged in writing and contractually promised that the extract and purification technology used by Orochem to produce CBD from industrial hemp was solely owned by Orochem. The Folium defendants further agreed to treat any information learned relating to such technology as Orochem's

3

confidential information and not to use or practice such technology. After learning certain details of Orochem's technology and surreptitiously securing the services of Ninawe, the Folium defendants decided to cast aside their contractual promises in an egregious breach of their contractual obligations and betrayal of trust that Orochem had placed in the Folium defendants. Orochem brings this action for misappropriation of its valuable trade secrets under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831 *et seq.*, the Illinois Trade Secrets Act ("ITSA"), 765 ILCS § 1065 *et seq.*, and for breach of contract.

## Parties

6.  Orochem is a corporation organized under the laws of Illinois with its principal place of business at 340 Shuman Boulevard, Naperville, Illinois 60563. Orochem currently employs over 30 employees in Naperville that focus on developing novel applications in the field of chromatography and separation science.

7.  Orochem was founded by Dr, Asha Oroskar (Dr. Asha) and Dr. Anil Oroskar ("Dr. Anil").

8.  Dr. Asha is the Chief Executive Officer ("CEO") of Orochem; she has a PhD in molecular biology from Loyola University in Chicago. Prior to founding Orochem, Dr. Asha served as a research assistant at the Cancer Research Institute, a research assistant at Loyola Medical School, a research assistant at Argonne National Labs and a senior scientist at Nalge Nunc (now known as Thermo Fisher Scientific), where she led teams of scientists in developing various novel analytical products.

9.     Dr. Anil is the Chief Technology Officer ("CTO") at Orochem; he has a PhD in chemical engineering from the University of Wisconsin, Madison.  Prior to helping found Orochem, Dr. Anil worked at United Oil and Petroleum ("UOP"), a research and development company that specializes in developing commercial scale chromatography for the petrochemical industry.  Dr. Anil led the refinery and petrochemical design and process improvement division at UOP, and later served as UOP's General Manager of Innovation.  Dr. Anil has developed, designed, and installed large scale chromatography plants throughout the world during his 25-year career at UOP.  Dr. Anil has had over 50 patents awarded to him in the field of chromatography and separation science.

10.     On information and belief, Folium is a Colorado limited liability company founded in 2014 that maintains its principal place of business at 828 Wooten Road, Colorado Springs, Colorado.

11.     Shan is the CEO of Folium.  On information and belief, Shan is a resident of Colorado.

12.     Gupta is the Chief Scientific Officer of Folium.  On information and belief, Gupta is a resident of California.

13.     B. Jones is an employee of Folium.  On information and belief, B. Jones is a resident of Colorado.

14.     Z. Jones is an employee of Folium.  On information and belief, Z. Jones is a resident of Colorado.

15.     Haley is an employee of Folium.  On information and belief, Haley is a resident of Colorado.

16.     Fleming is an employee of Folium.  On information and belief, Fleming is a resident of Colorado.

17.     Ninawe is a former employee of Orochem.  While employed by Orochem, Ninawe provided unlawful consulting services to Folium for the purpose of disclosing Orochem's confidential and trade secret information to Folium. Ninawe is currently employed by Folium.  On information and belief, Ninawe is a resident of Wisconsin.

## Jurisdiction and Venue

18.     The Court has subject matter jurisdiction over this action.  This trade secret misappropriation action raises a federal question under DTSA.  The Court has supplemental jurisdiction over Orochem's other claims pursuant to 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over the Folium defendants as they have conducted business within the State of Illinois and, in particular, have engaged in numerous acts relating to this action within the State of Illinois.  Each of the Folium defendants have attended meetings in Illinois, negotiated contracts between the parties, and otherwise were frequently present in Illinois for the purpose of carrying out their scheme to steal Orochem's trade secrets and confidential information.  Personal jurisdiction as to Folium and Jones further exists as they consented to the jurisdiction of this Court in a Non-Disclosure

Agreement ("NDA"). A true and correct copy of the NDA is attached hereto as Exhibit 1. In addition, personal jurisdiction as to Ninawe exists for the further reason that he signed an employment agreement subjecting him the jurisdiction of this Court.

20. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims asserted herein occurred in this district. Specifically, the Folium defendants engaged in efforts to copy and steal trade secrets while present in Naperville and further participated in numerous meetings in Naperville, Illinois for the purpose of inducing Orochem to provide it access to its confidential information. Venue is further proper in this district as to Folium and Jones as they consented to the venue of this Court in an NDA. A true and correct copy of the NDA is attached hereto as Exhibit 1. In addition, venue in this district is proper as to Ninawe for the further reason that he signed an employment agreement subjecting him to this venue.

## Factual Background

### *Folium's Need for Technology to Extract and Purify CBD from Industrial Hemp*

21. In October of 2015, Orochem's Chief Executive Officer, Dr. Asha, met representatives of Folium at Supply Side West (a conference held each year for the natural products market). At that conference, Folium's representatives indicated that they were trying to develop a means to produce commercial quantities of CBD from industrial hemp using supercritical fluid extraction technology. Dr. Asha indicated to Folium that she believed Orochem's proprietary Column

7

Chromatography and SMB technology could be used to produce commercial quantities of CBD from industrial hemp and that Orochem had substantial experience in producing high-purity biopharmaceutical and nutraceutical products at commercial scale. Dr. Asha further explained to Folium's representatives that supercritical fluid extraction technology could not be used to achieve the commercial scale production of CBD. The representatives of Folium indicated that they were not familiar with Orochem's column chromatography or SMB technology and did not have any experience or knowledge as to the use of such technology to purify CBD from industrial hemp.

22. Following the initial meeting at the Supply Side West conference, Orochem and Folium had further discussions in October 2015 regarding the possibility of Orochem performing research and development work to determine whether its proprietary Column Chromatography and SMB technology could be used to produce commercial quantities of high-purity CBD. During these subsequent discussions, Folium indicated that it was unable to produce CBD from industrial hemp in commercial quantities.

### *Orochem Performs Proof of Concept Work for the Purification of CBD*

23. Without any involvement of Folium personnel, Orochem began proof of concept work to determine whether its chromatography technology could be used to separate CBD from THC such that a THC-free product could be produced from industrial hemp.

24.     Chromatography is a technique used to separate mixtures.  The mixture is dissolved in a fluid called the *mobile phase,* which carries it through a structure holding another material called the *stationary phase*.  The various constituents of the mixture travel at different speeds, causing them to separate. The separation is based on differential partitioning between the mobile and stationary phases.  Subtle differences in a compound's partition coefficient result in differential retention on the stationary phase and thus affect the separation

25.     Orochem was able to perform this crucial proof of concept work based upon its nearly two decades worth of research and development work in the field of chromatography and separation science.  Orochem has devoted thousands of research hours and millions of dollars towards identifying stationary and mobile phases that can be used to effectively separate and purify different chemical compounds.  And, as result of this multi-decade investment of time and resources, Orochem has developed a core competency in applying its know-how and trade secrets to the separation and/or purification of myriad chemical compounds, proteins and other large molecules.

### Orochem Provides Folium With a Confidential Proposal for the Purification of CBD from Industrial Hemp

26.     Using its valuable know-how and trade secrets in the field of chromatography and separation science, Orochem determined at the proof of concept stage that it could produce high purity CBD from industrial hemp.  Based upon Orochem's initial proof of concept work, Orochem made a proposal in late October 2015 for the supply of a pilot scale Column Chromatography and SMB unit

to purify CBD from industrial hemp.  The proposal was marked "*Confidential,*

*Property of Orochem Technologies.*"  (emphasis added).

27.     In the October 2015 proposal, Orochem specified that Folium, its

agents, employees, and/or subcontractors were not permitted to use or disclose any

of the confidential information in the proposal, including without limitation any

"design drawings" or "technical information" of Orochem.  A true and correct copy of

pages 1, 19-21 of the October 2015 Orochem proposal in redacted form is attached

hereto as Exhibit 2.  The proposal further specified that Folium "agrees and

acknowledges that the [pilot SMB unit] supplied by [Orochem] contains [Orochem's]

intellectual property," and that Folium had no right to use Orochem's intellectual

property to "manufacture or provide (either internally or through the assistance of

third parties) a purification system that competes with and/or performs similar

functions as the [pilot scale SMB unit] supplied by Orochem."  *Id.* at pp. 14-15.

### *Orochem Develops a Full-Scale Production Method for CBD*

28.     Because Folium lacked the funds necessary to purchase the pilot scale

SMB unit and critically lacked the technical skills to operate a chromatography

system, the parties' discussions shifted towards Orochem performing

manufacturing for Folium to demonstrate that commercial quantities of CBD could

be produced from Orochem's proprietary technology.  Folium represented

throughout this time that it intended to engage Orochem as its exclusive supplier

and that once Orochem demonstrated its ability to reach commercial production

quantities it would enter into a long-term supply contract with Orochem for the supply of CBD on an exclusive basis.

29.     To create a manufacturing production line, Orochem underwent substantial research and development efforts, including without limitation: (i) developing a proprietary solvent extraction method, (ii) development and refinement of the stationary and mobile phases that most efficiently separates CBD from THC and removes other undesired impurities, (iii) the solvent recovery technology and equipment design needed to recycle the solvent used in the extraction and purification processes, and (iv) the crystallization of the final CBD product.  These efforts required thousands of research and development hours by Orochem's chemical engineers, PhD chemists, and other technically-skilled employees.

30.     In addition, Orochem developed detailed standard operating procedures ("SOPs") at great time and expense so that the process of producing THC-free CBD could be achieved on a consistent and efficient basis.  In connection with these substantial research and development efforts, Orochem has helped leading analytical testing laboratories to create new purity standards for THC-free CBD, which did not exist prior to Orochem's entry into this market.

31.     Orochem's production of high purity THC-free CBD products enabled Folium, as the marketer of these products, to reap millions of dollars in sales and to become, at that time, one of the market leaders in the sales of CBD. Folium issued press releases publicly touting its relationship with Orochem to the market and

11

acknowledging Orochem's critical role as the provider of the extraction and purification technology. In its announcement, Folium identified Orochem as a "leader in extraction and purification technology." A true and correct copy of the Folium press release is attached hereto as Exhibit 3.

32. Given the very substantial demand in the market, Folium proposed to send certain of its employees to Orochem to help in the final stage of production (*i.e.,* the time intensive step of drying the product and removal of any solvent after it is produced from the Orochem's extraction and Column Chromatography and SMB technology). Since these employees would be onsite at Orochem and would have visibility into certain aspects of Orochem's proprietary production line, Orochem required Folium's employees present at Orochem to sign a *unilateral* NDA. A true and correct copy of the NDA is attached hereto as Exhibit 1. Based on the evidence obtained to date, the real reason for Folium's proposal to send its employees to Orochem was the glean information related to Orochem's proprietary technology so that, contrary to its obligations under the NDA and DTSA, it could use such information design, procure and construct a copycat production line.

### Folium and its Employees Contractually Promise to Respect Orochem's Confidential and Proprietary Information for the Production of CBD

33. In the unilateral NDA, Folium and its employees agreed that Orochem's confidential information included "any and all technical and non-technical information that [Orochem] provides Recipient [Folium and its employees], whether in graphic, electronic, written or oral form, including but not limited to patent applications and other filings, trade secrets, and any other

12

proprietary information, as well as . . . techniques, sketches, drawings, . . . processes, . . . design details, . . . and engineering information." *Id.* at p. 1, ¶ 1. Folium and its employees agreed to hold such information in "strict confidence" and not to disclose it to any third party or otherwise use it beyond the purpose of exploring a potential business relationship between the parties. *Id.* at p. 1, ¶ 2.

34.     In addition, Folium and its employees acknowledged that nothing in the NDA should be construed as giving them any property rights in or license to the Orochem confidential information. *Id.* at p. 2, ¶ 4. And, finally, Folium and its employees agreed to "not make, have made, use or sell for any purpose any product or service or other item using, incorporating or derived from any Confidential Information, absent written approval of [Orochem]." *Id.*

35.     Beyond having Folium and its employees sign the above-described NDA, Orochem took further steps to protect its proprietary technology by limiting the Folium employees' access to certain aspects of Orochem's proprietary technology, including establishing locations where Folium employees were not allowed to enter.

36.     Despite Orochem's admonitions that the foregoing aspects of its technology were off-limits to the Folium employees, certain Folium employees, including but not limited to B. Jones, began to ask Orochem employees about critical aspects of Orochem's technology. Consistent with the training and instruction that Orochem employees have received from the company's management as to the importance of maintaining the confidentiality of Orochem's proprietary

and trade secret information, the Orochem employees requested that the Folium employees stop such improper inquiries, and promptly reported the Folium employees' activities to Orochem's management team. For example, on March 29, 2016, Drew Le Bleu, an Orochem engineer, wrote to Orochem's CEO, Dr. Asha, its CTO, Dr. Anil, and its director of operations, Ved Gulati, to inform them that B. Jones was asking questions regarding "proprietary information" and that he asked about the "[stationary phase] we are using, the specific amount of material being loaded at different points in the process and what columns they are being loaded on, as well as asking for more details about the chromatography." A true and correct redacted copy of the 03/29/2016 email is attached hereto as Exhibit 4. Mr. Le Bleu further reported in his email that B. Jones was very "direct with his questions. . ." and that "[Le Bleu], along with other staff members, have asked him stop multiple times." *Id.* Orochem's CTO, Dr. Anil, immediately followed up Mr. LeBleu's email with an email to the Orochem engineers, including Ninawe, involved in the production of CBD that reminded them to be "sure to tell [the Folium] guys to talk to me [Dr. Anil] regarding any questions related to CBD production. *No side discussions which can leak info.*" *Id.* (emphasis added).

37. Orochem's management also raised this issue with Folium's Chief Scientific Officer, Gupta. To address these improper actions by Folium's employees, Gupta sent an email on April 8, 2016 to each of the Folium employees titled "*Orochem's proprietary information remains confidential.*" A true and correct redacted copy of Gupta's 04/08/2016 email is attached hereto as Exhibit 5. Gupta

14

instructed the Folium employees to focus on the end-stage production steps and that they were there only for the purpose of assisting the Orochem employees. *Id.* As to "other unit ops, *such as extraction, purification, polishing, and HPLC testing,*" Gupta instructed the Folium team members that they should be left to the Orochem personnel. *Id.* Gupta explained to the Folium employees that, "we appreciate *their* technology, patented or trade secrets." *Id.* (emphasis added). Orochem's CTO, Dr. Anil, forwarded a copy of Gupta's email to the various Orochem team members, including Ninawe, as a reminder that the Folium employees were not permitted to view or seek information related to certain aspects of Orochem's technology, including its extraction, purification, polishing or HPLC testing know-how and methods. A true and correct redacted copy of Dr. Anil's 04/08/2016 email is attached hereto as Exhibit 5.

### Orochem Achieved Commercial Scale Production, But Folium Failed to Consummate a Long-Term Supply Contract

38.     In the summer and early fall of 2016, Orochem significantly expanded its CBD production capabilities and continued to improve and refine its technology for the purification of CBD from industrial hemp. Orochem incurred significant expenses and devoted many engineering and other professional hours to achieve the scale-up of its technology. Orochem's efforts helped Folium become one of the largest sellers of CBD and greatly reduced the cost of production.

39.     As the market demands for CBD production continued to increase and Orochem's proprietary extract and purification technology was fully demonstrated, Orochem discussed with Folium the need to consummate a long-term supply

15

contract between the parties, as Folium had long promised would be the case once Orochem's technology was fully demonstrated. Orochem sought confirmation of Folium's willingness to enter into the long-term supply agreement because designing and building a CBD production plant in Colorado would cost Orochem millions of dollars.

40. In furtherance of the long-term supply agreement, Orochem representatives had numerous negotiations and discussions with Kashif Shan, Folium's CEO, about the proposed terms of that relationship. As the discussions progressed, Orochem, at Folium's request, had its legal counsel draft a long-term supply agreement. Orochem transmitted a copy of the draft long-term supply agreement in October 2016. Folium never provided any comments or proposed edits to the draft agreement despite Orochem's frequent inquiries to provide feedback on the proposed agreement.

41. In furtherance of the production quantities that would be called for under the proposed long-term supply agreement, Orochem began in late 2016 to scout out facilities in Colorado that could be used to produce commercial quantities of CBD. Orochem advised Folium of these efforts.

### Folium Disregards its Contractual Obligations and Plots to Steal Orochem's Trade Secrets with the Assistance of Ninawe

42. Despite Orochem's extensive efforts to increase its production capabilities, prepare and propose a draft supply contract and identify suitable locations for large scale production, Folium never took steps to move forward with the long-term supply contract with Orochem. Rather, unbeknownst to Orochem, it

16

was Folium's intention to steal and unlawfully replicate the Orochem proprietary technology for the extraction and purification of CBD at its own facilities. In furtherance of that illicit scheme, Folium secretly recruited one of Orochem's process engineers, Ninawe, to provide the details of Orochem's proprietary technology.

43.     Orochem has recently learned that, starting in the late spring or early summer of 2016, Ninawe began living with the Folium representatives who were working at the Orochem facility during that time-period. Orochem recently discovered this through a forensic review of Ninawe's email account, which shows that at least as of June 15, 2016, Ninawe was secretly living with Folium employees. A true and correct copy of the 06/15/2016 Gupta/B. Jones/Ninawe email is attached hereto as Exhibit 6. Ninawe never disclosed this fact to Orochem, but instead falsely represented to Orochem that he was living in an extended stay hotel in Naperville (as his family lived in Wisconsin and Ninawe was often commuting from Wisconsin to Naperville). Nor did anyone on the Folium team ever reveal that Ninawe was living with them; rather, the Folium defendants concealed this fact from Orochem, as knowledge of this would have resulted in their access to the Orochem facility being terminated and the discontinuation of Ninawe's employment at Orochem.

44.     Ninawe resigned from Orochem on March 15, 2017. At the time he resigned from Orochem, Ninawe told Orochem that he was joining Batteries Plus, LLC, in Wisconsin. A true and correct copy of Ninawe's 03/15/2017 email is

attached hereto as Exhibit 7. But that was not true; contrary to his representations to Orochem, Ninawe began to work for Folium to help Folium steal Orochem's proprietary know-how, methods, designs and technology for the extraction and purification of CBD from industrial hemp. Orochem recently was told by Batteries Plus that Ninawe never worked for them.

45. While Ninawe worked for Orochem, he gained experience and training in, among other things (i) proof of concept, screening studies, process development, and optimization using Column Chromatography and SMB technology and chromatography technique; (ii) design, management, and interpretation of all phases of scale-up from bench scale laboratory experiments to commercial scale plants; (iii) plant design, automation, on-site installation, commissioning, and technology transfer; (iv) process validation and process qualification activities, (v) training, quality and corrective action support after installation; (vi) documentation and development of SOPs; and (vii) development of innovative solutions to address upstream and downstream chromatography operations.

46. As a member of the Orochem team involved in the scale-up of Orochem's CBD technology, Ninawe was intimately involved in Orochem's CBD production efforts and, as such, was given access to Orochem's know-how, methods, designs and technology for the production of CBD from industrial hemp. In that regard, Ninawe received access to Orochem's proprietary information concerning the stationary and mobile phases identified and used by Orochem to perform the chromatographic separation of CBD and THC, as well as other impurities. He also

18

was privy to the particular solvent used in the extraction and purification steps developed by Orochem. In addition, Ninawe was provided with information concerning the proprietary designs of equipment used in Orochem's extraction and purification processes and the particular process configurations utilized by Orochem. Ninawe was also given access to Orochem's SOPs for the production of CBD, so as to enable him to perform his job duties as a member of the Orochem CBD team.

47. Like Orochem's other employees, Ninawe was asked to sign an employment agreement when he joined the company in October 2015. Orochem's standard on-boarding practice for new employees includes the execution of its employment agreement and the training of employees as to the importance of guarding the secrecy of Orochem's proprietary information. Orochem does not permit prospective employees to join the company without executing the company's employment agreement. The Orochem employment agreement contains detailed confidentiality obligations and non-compete obligations. On October 21, 2015, Ninawe and another employee on-boarded that day were presented with Orochem's employment agreement. A true and correct redacted copy of the 10/21/2015 email showing the transmittal of Ninawe's employment agreement is attached hereto as Exhibit 8. Ninawe executed the Orochem employment agreement on or about October 21, 2015.

48. In addition to signing the Orochem employment agreement, Ninawe was informed by Orochem management that Orochem's know-how, methods,

designs, processes and other technical information are confidential and proprietary information belonging to the company and could not be shared absent express permission by Orochem's management team. As it relates to the CBD project at Orochem, Orochem management reminded the Orochem team on a number of occasions, including in writing, that it should not share the details if Orochem's proprietary methods, designs and/or processes with Folium or its employees.

### Folium and Ninawe Solicit Orochem's Vendors to Procure Orochem's Proprietary Equipments Designs and Materials Needed to Produce THC-Free CBD

49. Orochem recently learned that Ninawe has joined Folium. Orochem only learned this because a vendor contacted Orochem to report that an ex-employee of Orochem is working for Folium and is seeking to obtain equipment used in Orochem's proprietary method for the extraction and purification of CBD from industrial hemp that had been specially designed and constructed by the vendor based upon Orochem's confidential specifications. Specifically, on behalf of his new employer, Folium, Ninawe has contacted and communicated with Orochem's solvent recovery system vendor to purchase a solvent recovery unit that mirrors the proprietary design of the unit built for Orochem. The solvent recovery system designed and built for Orochem incorporates Orochem's novel design requirements for the production of CBD from industrial hemp, including without limitation Orochem's confidential flow requirements, and the thermal requirements for the decarboxylation of CBD.

20

50.     During his tenure at Orochem, Ninawe had access to this information, as part of his job duties.  Ninawe acknowledged the impropriety of his actions by pleading with the vendor to not disclose his illicit activities or that he was now working with Folium.  Moreover, Ninawe and Folium have engaged in further efforts to disguise his employment at Folium by not using his full first or last name in his Folium email address.  By contrast, the other Folium email addresses use employee's full first or last names.

51.     Through a forensic examination of Ninawe's email files, Orochem has uncovered that Ninawe has long been engaged in efforts to convey Orochem's confidential and proprietary information to Folium and further that Folium has actively solicited Ninawe's illicit support.  For example, this evidence establishes that on April 19, 2017, (shortly after Ninawe resigned from Orochem), B. Jones sought Ninawe's assistance in identifying the proprietary pump systems and designs needed to operate the Orochem chromatography system.  A true and correct redacted copy of the 04/19/2017 B. Jones/Ninawe email is attached hereto as Exhibit 9.  While working for Orochem, Ninawe was directly involved in the identification and design requirements for the pump system to enable Orochem's chromatography system.  B. Jones' need to enlist Ninawe's help in such efforts confirms the confidential nature of Orochem's novel design and process requirements, as well as Folium's concerted effort to steal Orochem's proprietary technology.

52.     The forensic review of Ninawe's email files further shows that on June 8, 2017 (almost 3 months after Ninawe's last day of employment at Orochem)

21

Ninawe was involved in Folium's efforts to find vendors to supply it with fittings used to connect critical piping and other equipment to chromatography columns, additional evidence demonstrating Folium's ongoing efforts to replicate Orochem's proprietary chromatography system. A true and correct redacted copy of the 06/08/2017 email is attached hereto as Exhibit 10. While Ninawe was employed by Orochem and part of the Orochem CBD production team, Ninawe had access to and was familiar with the specific fittings Orochem has determined are best used for the functionality and/or performance of the chromatographic columns.

53. Orochem has taken further steps to investigate the extent to which Folium, now aided by Orochem's former employee, Ninawe, is engaged in ongoing efforts to design, procure and/or build a method of CBD extraction and purification based upon Orochem's proprietary chromatography system. Orochem has learned that Folium contacted two of Orochem's long-time suppliers of stationary phase materials to acquire the very resins that Orochem developed and determined would effectively and efficiently separate CBD from THC, as well as other impurities. As an Orochem employee involved in the production of CBD, Ninawe had access to the specific stationary phase materials (or resins) used by Orochem in its proprietary chromatography system.

54. Orochem has further learned that Folium is engaged in efforts to obtain the specific solvent used by Orochem in its proprietary extraction technology. Indeed, the forensic review of Ninawe's email account shows that Folium is attempting to identify and obtain the precise solvent used by Orochem, including by

contacting the vendors used by Orochem's related company, Kazmira, LLC. In addition, Orochem has learned that Folium is engaged in efforts to obtain equipment necessary to replicate the novel end-stage processes developed by Orochem to crystallize the final CBD product. In sum, Folium is engaged in a wholesale effort aided by Ninawe and information they gleaned pursuant to an NDA to steal Orochem's proprietary methods, designs, processes and equipment to produce THC-free CBD in commercial quantities.

## COUNT I – TRADE SECRET MISAPPROPRIATION (DTSA) – 18 U.S.C. § 1836(b) (AGAINST FOLIUM)

55. Orochem re-alleges and incorporates by reference the allegations of paragraphs 1 through 54 above as though fully set forth herein.

56. Orochem is the owner of valuable trade secrets related to the extraction, purification and crystallization of CBD from industrial hemp, which are used to produce products that are used in or intended for use in interstate and/or foreign commerce. Such trade secrets include without limitation Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp ("Orochem's proprietary know-how"). Orochem's proprietary know-how is used in each step of the production of CBD, including the extraction, purification, and crystallization of CBD from industrial hemp.

57. Orochem has taken reasonable steps to protect and keep such information secret and confidential. As specified above in detail, Orochem requires its employees to sign employment agreements with detailed confidentiality

23

provisions, trains and reminds employees in writing and orally regarding the need to protect the company's trade secrets, and limits the employees within the company who have access to trade secret information related to particular projects. In addition, Orochem requires customers and third parties to sign NDAs before obtaining access to Orochem's confidential information. As it relates to Orochem's relationship with Folium, Orochem put Folium on notice in writing and orally from the start of the parties' relationship that its proprietary know-how relating to the extraction and purification of CBD was Orochem's confidential information and that Folium had no right to use or disclose such information. Orochem further required Folium's employees, who were present at Orochem's facility, to sign a unilateral NDA. Furthermore, Orochem limited Folium employees' access to certain designated areas of the Orochem facility and also coordinated with Folium's Chief Scientific Officer (Gupta) to reinforce to Folium's employees that they should not engage in any efforts to discern information relating to Orochem's proprietary methods, processes, designs and/or materials used to extract, purify, and/or crystallize CBD from industrial hemp.

58.     Orochem's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means. Specifically, Orochem's trade secrets relating to the extraction, purification, and/or crystallization of CBD from industrial hemp permit it to produce a THC-free product at commercial scale that other competitors, including Folium, cannot achieve without Orochem's trade secrets. As such,

24

Orochem's trade secrets provide it with significant advantages in the production of THC-free CBD.

59. Folium has used and/or disclosed Orochem's trade secrets without Orochem's express or implied consent. Folium has used improper means to acquire knowledge of Orochem's trade secrets by, among other things, (i) failing to abide by its various written and oral promises not to access or use Orochem's trade secrets for its own purposes, (ii) violating the NDA, (iii) using Ninawe to share and disclose information that Folium and Ninawe knew Ninawe had no right or permission to share; and (iv) misrepresenting its intention to proceed with a long-term supply agreement for the purpose of getting access to Orochem's trade secrets information.

60. Folium acquired access to Orochem's trade secrets under circumstances giving rise to a duty to maintain the secrecy of Orochem's information. Accordingly, Folium owed a duty to Orochem to maintain the secrecy of Orochem's trade secrets.

61. Folium, with the intent to convert trade secrets that are related to a product and/or service used in or intended for use in interstate or foreign commerce to the economic benefit of the Folium defendants, and intending or knowing that the offense will injure Orochem, did knowingly the following:

     a. Stole without authorization confidential information concerning Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp;

b.   Received and/or possessed such information, knowing the same to have been stolen or misappropriated, obtained, or converted without authorization;

c.   Used Orochem's confidential information relating to the extraction and purification of CBD to procure equipment and/or materials from Orochem's vendors so to as to design and build a competing production line for CBD; and

d.   Conspired with one or more persons, including without limitation Ninawe, to commit any offense described in paragraphs (a) through (c), and one or more persons of such persons performed an act to effect the object of the conspiracy.

62.   Folium continues to misappropriate Orochem's proprietary information through using Orochem's confidential and trade secret information to design and build a CBD production line and to solicit Orochem's vendors for the purpose of procuring Orochem's technology.  In addition, Folium is continuing to work with Ninawe so as to gain access to Orochem's confidential and trade secret information relating to the production of THC-free CBD, and to enable Folium's ability to design, build and operate a copycat production system.

**COUNT II – TRADE SECRET MISAPPROPRIATION (DTSA) – 18
U.S.C. § 1836(b) (AGAINST SHAN, GUPTA, B. JONES, Z. JONES,
HALEY AND FLEMING)**

63.     Orochem re-alleges and incorporates by reference the allegations of
paragraphs 1 through 54 above as though fully set forth herein.

64.     Orochem is the owner of valuable trade secrets related to the
extraction, purification and crystallization of CBD from industrial hemp, which are
used to produce products that are used in or intended for use in interstate and/or
foreign commerce.  Such trade secrets include without limitation Orochem's
methods, designs, drawings, processes, equipment, materials and SOPs used to
purify THC-free CBD from industrial hemp ("Orochem's proprietary know-how").
Orochem's proprietary know-how is used in each step of the production of CBD,
including the extraction, purification, and crystallization of CBD from industrial
hemp.

65.     Orochem has taken reasonable steps to protect and keep such
information secret and confidential.  As specified above in detail, Orochem requires
its employees to sign employment agreements with detailed confidentiality
provisions, trains and reminds employees in writing and orally regarding the need
to protect the company's trade secrets, and limits the employees within the
company who have access to trade secret information related to particular projects.
In addition, Orochem requires customers and third parties to sign NDAs before
obtaining access to Orochem's confidential information.  As it relates to Orochem's
relationship with Folium, Orochem put Shan, Gupta, B. Jones, Z. Jones, Haley and

27

Fleming on notice in writing and orally from the start of the parties' relationship that its proprietary know-how relating to the extraction and purification of CBD was Orochem's confidential information and that they had no right to use or disclose such information. Orochem further required Folium's employees, who were present at Orochem's facility, to sign a unilateral NDA. Furthermore, Orochem limited Folium employees' access to certain designated areas of the Orochem facility and also coordinated with Folium's Chief Scientific Officer (Gupta) to reinforce to Folium's employees that they should not engage in any efforts to discern information relating to Orochem's proprietary methods, processes, designs and/or materials used to extract, purify, and/or crystallize CBD from industrial hemp.

66. Orochem's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means. Specifically, Orochem's trade secrets relating to the extraction, purification, and/or crystallization of CBD from industrial hemp permit it to produce a THC-free product at commercial scale that other competitors, including Folium, cannot achieve without Orochem's trade secrets. As such, Orochem's trade secrets provide it with significant advantages in the production of THC-free CBD.

67. Shan, Gupta, B. Jones, Z. Jones, Haley, and Fleming have used and/or disclosed Orochem's trade secrets without Orochem's express or implied consent. Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming have used improper means to acquire knowledge of Orochem's trade secrets by, among other things, (i) failing to

abide by their various written and oral promises not to access or use Orochem's trade secrets for their own purposes, (ii) violating the NDA, (iii) using Ninawe to share and disclose information that they and Ninawe knew Ninawe had no right or permission to share; and/or (iv) misrepresenting their intention to proceed with a long-term supply agreement for the purpose of getting access to Orochem's trade secrets information.

68. Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming acquired access to Orochem's trade secrets under circumstances giving rise to a duty to maintain the secrecy of Orochem's information. Accordingly, Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming each owed a duty to Orochem to maintain the secrecy of Orochem's trade secrets.

69. Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming with the intent to convert trade secrets that are related to a product and/or service used in or intended for use in interstate or foreign commerce to the economic benefit of Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming and their employer Folium, and intending or knowing that the offense will injure Orochem, did knowingly the following:

    a. Stole without authorization confidential information concerning Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp;

b. Received and/or possessed such information, knowing the same to have been stolen or misappropriated, obtained, or converted without authorization;

c. Used Orochem's confidential information relating to the extraction and purification of CBD to procure equipment and/or materials from Orochem's vendors so to as to design and build a competing production line for CBD; and

d. Conspired with one or more persons, including without limitation Ninawe, to commit any offense described in paragraphs (a) through (c), and one or more persons of such persons performed an act to effect the object of the conspiracy.

70. Shan, Gupta, B. Jones, Z. Jones, Haley, and Fleming continue to misappropriate Orochem's proprietary information through using Orochem's confidential and trade secret information to design and build a CBD production line and to solicit Orochem's vendors for the purpose of procuring Orochem's technology. In addition, Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming are continuing to work with Ninawe to gain access to Orochem's confidential and trade secret information relating to the production of THC-free CBD, and to enable their ability to design, build and operate a copycat production system.

## COUNT III – TRADE SECRET MISAPPROPRIATION (DTSA) – 18 U.S.C. § 1836(b) (AGAINST NINAWE)

71.     Orochem re-alleges and incorporates by reference the allegations of paragraphs 1 through 54 above as though fully set forth herein.

72.     Orochem is the owner of valuable trade secrets related to the extraction, purification and crystallization of CBD from industrial hemp, which are used to produce products that are used in or intended for use in interstate and/or foreign commerce.  Such trade secrets include without limitation Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp ("Orochem's proprietary know-how").  Orochem's proprietary know-how is used in each step of the production of CBD, including the extraction, purification, and crystallization of CBD from industrial hemp.

73.     Orochem has taken reasonable steps to protect and keep such information secret and confidential.  As specified above in detail, Orochem requires its employees to sign employment agreements with detailed confidentiality provisions, trains and reminds employees in writing and orally regarding the need to protect the company's trade secrets, and limits the employees within the company who have access to trade secret information related to particular projects. In addition, Orochem requires customers and third parties to sign NDAs before obtaining access to Orochem's confidential information.  As it relates to Orochem's relationship with Folium, Orochem put Folium on notice in writing and orally from the start of the parties' relationship that its proprietary know-how relating to the

31

extraction and purification of CBD was Orochem's confidential information and that Folium had no right to use or disclose such information. Orochem further required Folium's employees, who were present at Orochem's facility, to sign a unilateral NDA. Furthermore, Orochem limited Folium employees' access to certain designated areas of the Orochem facility and also coordinated with Folium's Chief Scientific Officer (Gupta) to reinforce to Folium's employees that they should not engage in any efforts to discern information relating to Orochem's proprietary methods, processes, designs and/or materials used to extract, purify, and/or crystallize CBD from industrial hemp.

74.    Orochem's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means. Specifically, Orochem's trade secrets relating to the extraction, purification, and/or crystallization of CBD from industrial hemp permit it to produce a THC-free product at commercial scale that other competitors, including Folium, cannot achieve without Orochem's trade secrets. As such, Orochem's trade secrets provide it with significant advantages in the production of THC-free CBD.

75.    Ninawe has used and/or disclosed Orochem's trade secrets without Orochem's express or implied consent. Ninawe has used improper means to acquire knowledge of Orochem's trade secrets by, among other things, (i) failing to abide by his various written and oral promises not to access or use Orochem's trade secrets for his own purposes and outside the scope of his employment with Orochem, (ii)

32

violating his employment agreement, which bars any use of Orochem's trade secret or confidential information outside the scope of Ninawe's employment; and (iii) concealing his relationship with Folium during his employment at Orochem.

76.     Ninawe acquired access to Orochem's trade secrets under circumstances giving rise to a duty to maintain the secrecy of Orochem's information.  Accordingly, Ninawe owed a duty to Orochem to maintain the secrecy of Orochem's trade secrets.

77.     Ninawe, with the intent to convert trade secrets that are related to a product and/or service used in or intended for use in interstate or foreign commerce to the economic benefit of himself and Folium, and intending or knowing that the offense will injure Orochem, did knowingly the following:

a.  Stole without authorization confidential information concerning Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp;

b.  Received and/or possessed such information, knowing the same to have been stolen or misappropriated, obtained, or converted without authorization;

c.  Used Orochem's confidential information relating to the extraction and purification of CBD to procure equipment and/or materials from Orochem's vendors so to as to design and build a competing production line for CBD; and

d. Conspired with one or more persons, including without limitation Shan, Gupta, and Jones, to commit any offense described in paragraphs (a) through (c), and one or more persons of such persons performed an act to effect the object of the conspiracy.

78. Ninawe continues to misappropriate Orochem's proprietary information through using Orochem's confidential and trade secret information to design and build a CBD production line and to solicit Orochem's vendors for the purpose of procuring Orochem's technology. In addition, Ninawe continues to work with Folium for the illicit purpose of enabling Folium's ability to design, build and operate a production system based upon Orochem's trade secrets and confidential information.

## COUNT IV – TRADE SECRET MISAPPROPRIATION (ITSA) – 765 ILCS 1065/1 (AGAINST FOLIUM)

79. Orochem re-alleges and incorporates by reference the allegations of paragraphs 1 through 54 above as though fully set forth herein.

80. Orochem is the owner of valuable trade secrets related to the extraction, purification and crystallization of CBD from industrial hemp. Such trade secrets include without limitation Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp ("Orochem's proprietary know-how"). Orochem's proprietary know-how is used in each step of the production of CBD, including the extraction, purification, and crystallization of CBD from industrial hemp.

34

81.     Orochem has taken reasonable steps to protect and keep such information secret and confidential.  As specified above in detail, Orochem requires its employees to sign employment agreements with detailed confidentiality provisions, trains and reminds employees in writing and orally regarding the need to protect the company's trade secrets, and limits the employees within the company who have access to trade secret information related to particular projects. In addition, Orochem requires customers and third parties to sign NDAs before obtaining access to Orochem's confidential information.  As it relates to Orochem's relationship with Folium, Orochem put Folium on notice in writing and orally from the start of the parties' relationship that its proprietary know-how relating to the extraction and purification of CBD was Orochem's confidential information and that Folium had no right to use or disclose such information.  Orochem further required Folium's employees, who were present at Orochem's facility, to sign a unilateral NDA.  Furthermore, Orochem limited Folium employees' access to certain designated areas of the Orochem facility and also coordinated with Folium's Chief Scientific Officer (Gupta) to reinforce to Folium's employees that they should not engage in any efforts to discern information relating to Orochem's proprietary methods, processes, designs and/or materials used to extract, purify, and/or crystallize CBD from industrial hemp.

82.     Orochem's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means.  Specifically, Orochem's trade secrets relating to the

extraction, purification, and/or crystallization of CBD from industrial hemp permit it to produce a THC-free product at commercial scale that other competitors, including Folium, cannot achieve without Orochem's trade secrets. As such, Orochem's trade secrets provide it with significant advantages in the production of THC-free CBD.

83. Folium has used and/or disclosed Orochem's trade secrets without Orochem's express or implied consent. Folium has used improper means to acquire knowledge of Orochem's trade secrets by, among other things, (i) failing to abide by its various written and oral promises not to access or use Orochem's trade secrets for its own purposes, (ii) violating the NDA, (iii) using Ninawe to share and disclose information that Folium and Ninawe knew Ninawe had no right or permission to share; and (iv) misrepresenting its intention to proceed with a long-term supply agreement for the purpose of getting access to Orochem's trade secrets information.

84. Folium acquired access to Orochem's trade secrets under circumstances giving rise to a duty to maintain the secrecy of Orochem's information. Accordingly, Folium owed a duty to Orochem to maintain the secrecy of Orochem's trade secrets.

85. Folium, with the intent to convert trade secrets that are related to a product and/or service used in or intended for use in interstate or foreign commerce to the economic benefit of the Folium defendants, and intending or knowing that the offense will injure Orochem, did knowingly the following:

a. Stole without authorization confidential information concerning Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp;

b. Received and/or possessed such information, knowing the same to have been stolen or misappropriated, obtained, or converted without authorization;

c. Used Orochem's confidential information relating to the extraction and purification of CBD to procure equipment and/or materials from Orochem's vendors so to as to design and build a competing production line for CBD; and

d. Conspired with one or more persons, including without limitation Ninawe, to commit the acts described in paragraphs (a) through (c), and one or more persons of such persons performed an act to effect the object of the conspiracy.

86. Folium continues to misappropriate Orochem's proprietary information through using Orochem's confidential and trade secret information to design and build a CBD production line and to solicit Orochem's vendors for the purpose of procuring Orochem's technology. In addition, Folium is continuing to work with Ninawe so as to gain access to Orochem's confidential and trade secret information relating to the production of THC-free CBD, and to enable Folium's ability to design, build and operate a copycat production system.

## COUNT V – TRADE SECRET MISAPPROPRIATION (ITSA) – 765 ILCS 1065/1 (AGAINST SHAN, GUPTA, B. JONES, Z. JONES, HALEY AND FLEMING)

87.     Orochem re-alleges and incorporates by reference the allegations of paragraphs 1 through 54 above as though fully set forth herein.

88.     Orochem is the owner of valuable trade secrets related to the extraction, purification and crystallization of CBD from industrial hemp.  Such trade secrets include without limitation Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp ("Orochem's proprietary know-how").  Orochem's proprietary know-how is used in each step of the production of CBD, including the extraction, purification, and crystallization of CBD from industrial hemp.

89.     Orochem has taken reasonable steps to protect and keep such information secret and confidential.  As specified above in detail, Orochem requires its employees to sign employment agreements with detailed confidentiality provisions, trains and reminds employees in writing and orally regarding the need to protect the company's trade secrets, and limits the employees within the company who have access to trade secret information related to particular projects. In addition, Orochem requires customers and third parties to sign NDAs before obtaining access to Orochem's confidential information.  As it relates to Orochem's relationship with Folium, Orochem put Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming on notice in writing and orally from the start of the parties' relationship that its proprietary know-how relating to the extraction and purification of CBD

38

was Orochem's confidential information and that they had no right to use or disclose such information. Orochem further required Folium's employees, who were present at Orochem's facility, to sign a unilateral NDA. Furthermore, Orochem limited Folium employees' access to certain designated areas of the Orochem facility and also coordinated with Folium's Chief Scientific Officer (Gupta) to reinforce to Folium's employees that they should not engage in any efforts to discern information relating to Orochem's proprietary methods, processes, designs and/or materials used to extract, purify, and/or crystallize CBD from industrial hemp.

90.     Orochem's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means. Specifically, Orochem's trade secrets relating to the extraction, purification, and/or crystallization of CBD from industrial hemp permit it to produce a THC-free product at commercial scale that other competitors, including Folium, cannot achieve without Orochem's trade secrets. As such, Orochem's trade secrets provide it with significant advantages in the production of THC-free CBD.

91.     Shan, Gupta, B. Jones, Z. Jones, Haley, and Fleming have used and/or disclosed Orochem's trade secrets without Orochem's express or implied consent. Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming have used improper means to acquire knowledge of Orochem's trade secrets by, among other things, (i) failing to abide by their various written and oral promises not to access or use Orochem's trade secrets for their own purposes, (ii) violating the NDA, (iii) using Ninawe to

39

share and disclose information that they and Ninawe knew Ninawe had no right or permission to share; and/or (iv) misrepresenting their intention to proceed with a long-term supply agreement for the purpose of getting access to Orochem's trade secrets information.

92. Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming acquired access to Orochem's trade secrets under circumstances giving rise to a duty to maintain the secrecy of Orochem's information. Accordingly, Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming each owed a duty to Orochem to maintain the secrecy of Orochem's trade secrets.

93. Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming with the intent to convert trade secrets that are related to a product and/or service used in or intended for use in interstate or foreign commerce to the economic benefit of Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming and their employer Folium, and intending or knowing that the offense will injure Orochem, did knowingly the following:

a. Stole without authorization confidential information concerning Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp;

b. Received and/or possessed such information, knowing the same to have been stolen or misappropriated, obtained, or converted without authorization;

c.  Used Orochem's confidential information relating to the extraction and purification of CBD to procure equipment and/or materials from Orochem's vendors so to as to design and build a competing production line for CBD; and

d.  Conspired with one or more persons, including without limitation Ninawe, to commit such acts described in paragraphs (a) through (c), and one or more persons of such persons performed an act to effect the object of the conspiracy.

94.  Shan, Gupta, B. Jones, Z. Jones, Haley, and Fleming continue to misappropriate Orochem's proprietary information through using Orochem's confidential and trade secret information to design and build a CBD production line and to solicit Orochem's vendors for the purpose of procuring Orochem's technology. In addition, Shan, Gupta, B. Jones, Z. Jones, Haley and Fleming are continuing to work with Ninawe to gain access to Orochem's confidential and trade secret information relating to the production of THC-free CBD, and to enable their ability to design, build and operate a copycat production system.

## COUNT VI – TRADE SECRET MISAPPROPRIATION (ITSA) – 765 ILCS 1065/1 (AGAINST NINAWE)

95.  Orochem re-alleges and incorporates by reference the allegations of paragraphs 1 through 54 above as though fully set forth herein.

96.  Orochem is the owner of valuable trade secrets related to the extraction, purification and crystallization of CBD from industrial hemp. Such trade secrets include without limitation Orochem's methods, designs, drawings,

41

processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp ("Orochem's proprietary know-how"). Orochem's proprietary know-how is used in each step of the production of CBD, including the extraction, purification, and crystallization of CBD from industrial hemp.

97. Orochem has taken reasonable steps to protect and keep such information secret and confidential. As specified above in detail, Orochem requires its employees to sign employment agreements with detailed confidentiality provisions, trains and reminds employees in writing and orally regarding the need to protect the company's trade secrets, and limits the employees within the company who have access to trade secret information related to particular projects. In addition, Orochem requires customers and third parties to sign NDAs before obtaining access to Orochem's confidential information. As it relates to Orochem's relationship with Folium, Orochem put Folium on notice in writing and orally from the start of the parties' relationship that its proprietary know-how relating to the extraction and purification of CBD was Orochem's confidential information and that Folium had no right to use or disclose such information. Orochem further required Folium's employees, who were present at Orochem's facility, to sign a unilateral NDA. Furthermore, Orochem limited Folium employees' access to certain designated areas of the Orochem facility and also coordinated with Folium's Chief Scientific Officer (Gupta) to reinforce to Folium's employees that they should not engage in any efforts to discern information relating to Orochem's proprietary

methods, processes, designs and/or materials used to extract, purify, and/or crystallize CBD from industrial hemp.

98. Orochem's trade secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable through proper means. Specifically, Orochem's trade secrets relating to the extraction, purification, and/or crystallization of CBD from industrial hemp permit it to produce a THC-free product at commercial scale that other competitors, including Folium, cannot achieve without Orochem's trade secrets. As such, Orochem's trade secrets provide it with significant advantages in the production of THC-free CBD.

99. Ninawe has used and/or disclosed Orochem's trade secrets without Orochem's express or implied consent. Ninawe has used improper means to acquire knowledge of Orochem's trade secrets by, among other things, (i) failing to abide by his various written and oral promises not to access or use Orochem's trade secrets for his own purposes and outside the scope of his employment with Orochem, (ii) violating his employment agreement, which bars any use of Orochem's trade secret or confidential information outside the scope of Ninawe's employment; and (iii) concealing his relationship with Folium during his employment at Orochem.

100. Ninawe acquired access to Orochem's trade secrets under circumstances giving rise to a duty to maintain the secrecy of Orochem's information. Accordingly, Ninawe owed a duty to Orochem to maintain the secrecy of Orochem's trade secrets.

101.    Ninawe, with the intent to convert trade secrets that are related to a product and/or service used in or intended for use in interstate or foreign commerce to the economic benefit of himself and Folium, and intending or knowing that the offense will injure Orochem, did knowingly the following:

a.  Stole without authorization confidential information concerning Orochem's methods, designs, drawings, processes, equipment, materials and SOPs used to purify THC-free CBD from industrial hemp;

b.  Received and/or possessed such information, knowing the same to have been stolen or misappropriated, obtained, or converted without authorization;

c.  Used Orochem's confidential information relating to the extraction and purification of CBD to procure equipment and/or materials from Orochem's vendors so to as to design and build a competing production line for CBD; and

d.  Conspired with one or more persons, including without limitation Shan, Gupta, and Jones, to commit such acts described in paragraphs (a) through (c), and one or more persons of such persons performed an act to effect the object of the conspiracy.

102.    Ninawe continues to misappropriate Orochem's proprietary information through using Orochem's confidential and trade secret information to design and build a CBD production line and to solicit Orochem's vendors for the

44

purpose of procuring Orochem's technology. In addition, Ninawe continues to work with Folium for the illicit purpose of enabling Folium's ability to design, build and operate a production system based upon Orochem's trade secrets and confidential information.

## COUNT VII – BREACH OF CONTRACT (NDA)
## (AGAINST FOLIUM, B. JONES, Z. JONES, HALEY AND FLEMING)

103. Orochem re-alleges and incorporates by reference the allegations of paragraphs 1 through 54 above as though fully set forth herein.

104. The NDA is a valid, enforceable written contract, with definite and certain terms.

105. Orochem has performed all of its required obligations under the NDA.

106. Folium, B. Jones, Z. Jones, Haley and Fleming contractually promised in the NDA to not disclose or use Orochem's confidential or proprietary information relating to Orochem's technology to produce CBD. Folium, B. Jones, Z. Jones, Haley, and Fleming have breached and continue to breach their confidentiality obligations by, among other things, using Orochem's confidential and proprietary information to produce CBD and/or to design, build and utilize a system of extraction, purification and crystallization of CBD from industrial hemp that utilizes Orochem's confidential and proprietary information.

107. As result of Folium's, B. Jones', Z. Jones', Haley's and Fleming's breaches of the NDA, Orochem has suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Orochem prays for the following relief:

(a) Civil seizure pursuant to 18 U.S.C. § 1836(b)(2) of: (1) any chromatography equipment and/or stationary phase materials possessed and/or used by Folium to purify CBD from industrial hemp; (2) any solvent-based extraction system used by Folium to extract CBD from industrial hemp, including any solvent extraction systems used by Folium to remove solvent from CBD; (3) any equipment including rotovaps used by Folium to crystallize CBD based upon Orochem's proprietary technology; and (4) any written materials, including without limitation technical drawings, lab notebooks, or engineering plans, that encompass Orochem's trade secret information.

(b) A preliminary and permanent injunction pursuant to 18 U.S.C. § 1836(b)(3) enjoining the Folium defendants' use of Orochem's extraction, purification, and/or crystallization technology or any equipment or materials embodying that technology that is used by the Folium defendants to produce CBD;

(c) A preliminary and permanent injunction pursuant to 18 U.S.C. § 1836(b)(3) enjoining the Folium defendants from taking any steps to design, build or procure an extraction, purification and/or crystallization production system based upon Orochem's proprietary and confidential information;

46

(d)  A preliminary and permanent injunction pursuant to 18 U.S.C. §
1836(b)(3) enjoining the Folium defendants from contracting with
Orochem's suppliers for the supply of equipment and/or materials based
upon the Folium's misappropriation of Orochem's confidential information
relating to the supply and/or design of such materials and equipment;

(e) A preliminary and permanent injunction pursuant to 18 U.S.C. §
1836(b)(3) enjoining the Folium defendants from employing, working,
and/or consulting with Ninawe regarding the production of CBD;

(f) A preliminary and permanent injunction pursuant to 18 U.S.C. §
1836(b)(3) enjoining Ninawe from working and/or consulting with Folium;

(g) A preliminary and permanent injunction pursuant to 18 U.S.C. §
1836(b)(3) enjoining Ninawe from using or disclosing Orochem's trade
secret information;

(h) A judgment finding that the Folium defendants and Ninawe have
misappropriated Orochem's trade secrets;

(i)  An award of damages to Orochem under DTSA for the Folium defendants
and Ninawe's misappropriation of Orochem's trade secrets for (1) the
actual losses sustained by Orochem; (2) any unjust enrichment caused by
the misappropriation of Orochem's trade secrets that is not addressed in
computing damages for actual loss; (3) exemplary damages in the amount
of two times the amount of damages awarded for Orochem's actual losses
or the Folium defendants or Ninawe's unjust enrichment; and (4)

47

Orochem's reasonable attorneys' fees for the Folium defendants and Ninawe's willful and malicious misappropriation of the Orochem's trade secrets;

(j) A judgment that Folium, B. Jones, Z. Jones, Haley and Fleming breached the NDA;

(k) An award of damages to Orochem under ITSA for the Folium defendants and Ninawe's misappropriation of Orochem's trade secrets for (1) the actual losses sustained by Orochem; (2) any unjust enrichment caused by the misappropriation of Orochem's trade secrets that is not addressed in computing damages for actual loss; (3) exemplary damages in the amount of two times the amount of damages awarded for Orochem's actual losses or the Folium defendants or Ninawe's unjust enrichment; and (4) Orochem's reasonable attorneys' fees for the Folium defendants and Ninawe's willful and malicious misappropriation of the Orochem's trade secrets;

(l) An award of damages as a result of the breach of the NDA by Folium, B. Jones, Z. Jones, Haley, and Fleming; and

(m) Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Orochem hereby demands a trial by jury of all issues triable by jury.


Dated: September 27, 2017                    Respectfully submitted,


By:_____
        One of the attorneys for Plaintiff
            Orochem Technologies, Inc.



Richard J. Prendergast
Michael T. Layden
Brian C. Prendergast
Collin M. Bruck
David J. Rivelli
RICHARD J. PRENDERGAST, LTD. (#11381)
111 W. Washington, Suite 1100
Chicago, Illinois 60602
(312) 641-0881
rprendergast@rjpltd.com
mlayden@rjpltd.com
bprendergast@rjpltd.com
cbruck@rjpltd.com
drivelli@rjpltd.com


John C. Ellis
ELLIS LEGAL P.C.
250 S. Wacker Dr., Suite 600
Chicago, Illinois 60606
(312) 967-7629
jellis@ellislegal.com